```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF TEXAS
            FORT WORTH DIVISION

MARK SHUMSKI,                    §
                                 §
          Petitioner,            §
                                 §
v.                               §    No. 4:18-CV-293-Y
                                 §
LORIE DAVIS, Director,           §
Texas Department of Criminal     §
Justice, Correctional            §
Institutions Division,           §
                                 §
          Respondent.            §
```

**OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Mark Shumski, a state prisoner, against Lorie Davis, director of the Texas Department of Criminal Justice, Correctional Institutions Division, Respondent. After having considered the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I.  FACTUAL AND PROCEDURAL HISTORY**

In June 2011 Petitioner was indicted in Wise County, Texas, Case No. CR16247, for continuous sexual abuse of his stepdaughter A.G., a child younger than 14 years of age. (Clerk's R. 7, doc. 9-3.) On December 13, 2012, a jury found him guilty of the offense and assessed his punishment at 60 years' imprisonment. (Id. at 113, 117.) Petitioner's conviction was affirmed on appeal and the Texas

Court of Criminal Appeals refused his petition for discretionary review. (Docket Sheet 2, doc. 9-2.) Petitioner also filed a postconviction state habeas-corpus application challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. (SHR[1] 139-56, doc. 9-20; Action Taken, doc. 9-16.)

The state appellate court summarized the facts of the case as follows:

> The State charged [Petitioner] with committing two or more acts of sexual abuse against A.G. "from on or about February 16, 2008[,] through May 16, 2011." Specifically, the State alleged that [Petitioner] had committed the offense of indecency with a child by contact and that he had committed aggravated sexual assault by penetrating A.G.'s sexual organ with his finger.
>
> A.G. testified that [Petitioner] sexually abused her for about three years before she finally told her mother [K.G.]. She said that, before the time that [Petitioner] married her mother, [Petitioner] would come into her room at night, slip his hand underneath her clothes, and touch her vagina or insert his finger into her vagina. A.G. testified that, even though she told [Petitioner] "no" and told him that she did not like what he was doing to her, [Petitioner] continued to sexually abuse her.

(Mem. Op. 2, doc. 9-11.)

## II. ISSUES

In three grounds, Petitioner claims he received ineffective assistance of trial counsel because counsel failed to (1) object to

---

[1] "SHR" refers to the documentary record of Petitioner's state habeas proceeding in WR-86,083-01; "Supp. SHR" refers to the supplemental record in that proceeding.

and seek exclusion of testimony that A.G. was truthful, (2) object to evidence of CPS's findings that sexual abuse occurred, and (3) object to evidence and argument that Petitioner did not contest CPS's findings of sexual abuse. (Pet. 6-7 & App. i-ii, doc. 2.)

### III. RULE 5 STATEMENT

Respondent believes that the petition is neither time-barred nor successive and that Petitioner has properly exhausted his state-court remedies as to his claims. (Resp't's Answer 4, doc. 7.)

### IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). See 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *Id.* § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011). This standard is difficult to meet but "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

Additionally, the Act requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210

F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.[2] Further, when the Texas Court of Criminal Appeals denies relief in a state habeas-corpus application without written order, it is "presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter,* 562 U.S. at 99. In such a situation, a federal court may assume that the state court applied correct standards of federal law to the facts, unless there is evidence that an incorrect standard was applied. *Townsend v. Sain,* 372 U.S. 293, 314 (1963)[3]; *Catalan v. Cockrell,* 315 F.3d 491, 493 n.3 (5th Cir. 2002); *Valdez v. Cockrell,* 274 F.3d 941, 948 n.11 (5th Cir. 2001); *Goodwin v. Johnson,* 132 F.3d 162, 183 (5th Cir. 1997). A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. See 28 U.S.C. §

---

[2]Petitioner contends that the Court should not apply any "heightened presumption of correctness" to the state habeas court's factual findings because the state habeas judge, who conducted only a paper hearing via affidavit, was not the same judge who presided at his trial. (Pet'r's Reply 2, doc. 13.) However, a state court's factual determinations are entitled to a presumption of correctness under § 2254(e)(1), regardless of whether the state habeas court held a live evidentiary hearing, on a paper hearing, or whether the state habeas judge was the same judge who presided at trial. *See Littlepage v. Davis,* No. 4:15-CV-188-A, 2016 WL 6330430, at *3, n.4 (N.D. Tex. Oct. 25, 2016), *COA denied by* 2017 WL 7689597 (5th Cir. Nov. 2, 2017); *Pierson v. Thaler,* No. 4:10-CV-717-Y, 2011 WL 7006878, at *5 n.1_(N.D.Tex. Nov. 15, 2011), *R. & R. adopted by* 2012 WL 104982 (N.D.Tex. Jan. 12, 2012). The AEDPA's deferential scheme is mandatory. *See Valdez v. Cockrell,* 274 F.3d 941, 951 (5th Cir. 2001). Furthermore, given the nature of Petitioner's claims, the state habeas judge had no disadvantage in considering the claims by virtue of the fact that he was not the same judge who presided at Petitioner's trial. The record was sufficient to adjudicate the claims, and it is clear that the state court thoroughly reviewed the record.

[3]The standards of *Townsend v. Sain* have been incorporated into 28 U.S.C. § 2254(d). *Harris v. Oliver*, 645 F.2d 327, 330 n.2 (5th Cir. 1981).

4

2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003); *Williams v. Taylor,* 529 U.S. 362, 399 (2000).

In this case, the state habeas court entered express findings of fact and conclusions of law relevant to Petitioner's claims and, in denying relief, the Texas Court of Criminal Appeals adopted those findings. Petitioner has failed to rebut the presumptive correctness of the state courts' factual findings with clear and convincing evidence; thus, this Court applies the presumption of correctness to those findings, including the court's credibility findings, in considering Petitioner's claims. *See Richards v. Quarterman,* 566 F.3d 553, 563-64 (5th Cir. 2009); *Galvan v. Cockrell,* 293 F.3d 760, 764 (5th Cir. 2002).

## V. DISCUSSION

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387, 396 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where a petitioner's ineffective-assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state courts' decision was contrary to or involved an unreasonable application of the *Strickland* standard in light of the state-court record. *Richter,* 562 U.S. at 100-01 (quoting *Williams,* 529 U.S. at 410)); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). Thus, a federal court's review of state-court decisions regarding ineffective assistance of counsel must be "doubly deferential" so as to afford "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011)).

Petitioner raised his ineffective-assistance-of-counsel claims in his state habeas application, and the state habeas court conducted a hearing by affidavit. Petitioner retained the law firm of Paul Belew and David Singleton to represent him at trial. Singleton, an experienced criminal-defense attorney, responded to Petitioner's allegations, in relevant part, as follows (any

spelling, grammatical, and/or punctuation errors are in the original):

> 5. Prior to the trial of the case, we had numerous meetings both with [Petitioner] and between ourselves to discuss and map out possible strategies in defending [Petitioner] against the charges.
>
> 6. Prior to the commencement of trial and for various reasons, my partner Paul Belew and I had decided that we would limit objections during the trial of the case to objections that would likely preserve harmful error or likely exclude particularly harmful testimony. Our reasoning was several fold. We believed that given the nature of the charges and the likely testimony and demeanor of the witnesses that our best approach would be to appear as though we wanted to hide nothing; we welcomed all the evidence. Based on some prior experience with other members of the District Attorney's office, we also believed that it was possible that the State might lodge a number of objections, creating the appearance that it did not want the jury to hear all the facts. We also recognized the fact that objections can call attention to testimony (in effect "waking up" the jury) and were of the belief that while limiting instructions and instructions to disregard might be significant in the appellate process, they were far less significant in a jury's decision making process and are frequently disregarded.
>
> 7. We did not decide to make no objections, rather to be judicious and specific with the objections that we did lodge.
>
> 8. We specifically discussed this strategy with [Petitioner] prior to trial and our reasons for the approach.
>
> 9. During the trial of the case, the State called [CPS investigator] Kimberly Lowery. The State had previously provided us with Ms. Lowery's report and investigative materials.
>
> 10. Of the various witnesses who testified at trial, we

did not consider Ms. Lowery to be the most harmful or dangerous; rather we believed the testimony of the Victim, her mother and a few others would likely be accorded more weight by the jury.

11. Our reasoning was as follows. Specifically, we felt neither Ms. Lowery nor her investigation would be accorded great weight or significance by the jury. Ms. Lowery had only been working for Child Protective Services for a little over a year at the time of the investigation. She performed a limited, non-criminal investigation in which she interviewed only witnesses favorable to the State. After hearing only one side of the story, she did not conclude [Petitioner] had committed the act, but rather that there was "reason to believe" the allegations.

12. At trial, Ms. Lowery's testimony did not vary significantly from what we anticipated. In addition, by this point in the trial, the jury did not appear particularly attentive during her testimony. There were several occasions where we could have objected — indeed, had we believed that the testimony was particularly harmful or that the jury was particularly attentive or interested we could have made objections simply to interrupt the flow of her testimony. This was not the case.

13. My partner, Paul Belew, usually watches the jury during testimony and questioning. If the jury appears "interested" in a witness or line of questioning he will nudge me or lean over and say "object." Nothing he or I observed during Ms. Lowery's testimony convinced us to alter our initial strategy. In fact, during her direct testimony I leaned over and conferred with him briefly and determined to address matter on cross-examination rather than "waking the jury up."

14. [K.G.] was asked by the State, "And after you -- after you received this information, what did you do?" In her response, she added the statement she believed her daughter. Similarly when she was later asked about [Petitioner]'s response when he was confronted with the allegations, she responded that her daughter has no reason to lie. [Petitioner] wanted to talk about the accusations and [K.G.] was

8

asked if they ever talked about it and replied that she did not because she believed her daughter. In each case the responses complained of in the writ were unsolicited and non-responsive. An objection would merely call attention to and emphasize the answers in the minds of the jury. We believed an instruction to disregard would not be particularly effective.

15. Ms. Lowery was also asked by the State "How would you describe [A.G.]'s demeanor during the interview?" In response, Ms. Lowery added the statement that the victim was credible. Again, we judged that objecting to her response would only serve to call attention to it.

16. Ms. Lowery later testified that her supervisor reads over and approves all findings, "she has to read over the case and approve it." In other words, her supervisor does no independent or additional investigation (the Forensic Interview took place before the finding). On cross, we confirmed that her part in the investigation was conducting the Forensic Interview.

17. With respect to [Petitioner]'s failure to appeal the finding, first, Ms. Lowery confirmed that her findings were made after hearing only one side of the story — she never interviewed [Petitioner]. Second, she conceded that she "leave[s] the investigation, the criminal matter, to the Wise County Sheriff's Office." Third, Ms. Lowery admitted she had no knowledge as to whether [Petitioner] was aware of or served with the finding.

18. [Petitioner] complains that Detective Reynolds was asked if he would have filed a complaint if he believed the accusations were false. First, the various burdens of proof had been addressed in voir dire and the jury was aware that the police operate at the lowest level of probable cause. Second, as soon as the question was asked, we believed it safe to assume that a jury would assume the only answer Detective Reynolds could give was he would not have filed a case if he disbelieved the victim. Based on that assumption, an objection would only serve to heighten the significance of his answer.

9

19. [Petitioner] complains of statements made by Ms. Ivy, the victim's softball coach. The two specific lines of questions were that the victim on one occasion became angry with [Petitioner] and that the victim never told her a lie. We believed neither line was particularly harmful or significant. With respect to the former, most children get angry from time to time. With respect to the latter, we believed Ms. Ivy would qualify as a reputation witness and her testimony that the victim never told her a lie tended to discredit her. It showed she either did not know the victim well or that she was undiscerning. The jury had several parents, and we believed parents knew children do in fact lie.

(SHR 15-19, doc. 9-19 (record citations omitted).)

Consistent with counsel's affidavit, and following a thorough examination of the record, the state habeas court entered findings of fact, too numerous to list here. Based on those findings, and applying the *Strickland* standard and relevant state law, the state court entered the following legal conclusions:

**III. CONCLUSIONS OF LAW APPLICABLE COUNSEL'S DECISION NOT TO OBJECT TO TESTIMONY REGARDING THE CREDIBILITY OF A.G.**

1. Not objecting to testimony regarding the truthfulness of a child witness is not per se deficient performance.

2. Not objecting to testimony regarding the truthfulness of a child witness could be a reasonable trial strategy.

3. Counsel provided a reasonable explanation as to why he did not object to testimony regarding the complainant's truthfulness. Counsel stated his trial strategy was to avoid emphasizing the witness's testimony by objecting.

4. Counsel's performance was not deficient for not objecting to testimony and jury argument regarding

the complainant's truthfulness.

5.  The evidence against [Petitioner] is strong and would support a finding of guilt by the jury even if the evidence to which [Petitioner] objects were disregarded.

6.  [Petitioner] has not shown he was harmed by counsel's decision not to object to testimony regarding the complainant's truthfulness.

### IV. CONCLUSIONS OF LAW APPLICABLE COUNSEL'S DECISION NOT TO OBJECT TO TESTIMONY REGARDING THE RESULTS OF THE CPS INVESTIGATION

1.  To show ineffective assistance of counsel based on a failure to object to evidence, the applicant must show the trial judge would have erred in overruling the objection.

2.  A witness may testify to an opinion based on her perceptions if the testimony is helpful to determine of a fact in issue.

3.  An opinion is not objectionable simply because it embraces an ultimate issue.

4.  [Petitioner] has failed to show that the trial judge would have erred in overruling an objection regarding testimony about the results of the CPS investigation.

5.  Counsel's decision not to object to the results of the CPS investigation was a reasonable trial strategy because counsel was trying to avoid emphasizing the testimony.

6.  Counsel's decision not to object to the results of the CPS investigation was a reasonable trial strategy because counsel repeatedly emphasized the lower burden of proof for a CPS investigation.

7.  Counsel's performance was not deficient for deciding not to object to testimony regarding the results of the CPS investigation.

8.  The evidence against [Petitioner] is strong and would support a finding of guilt by the jury even

if the evidence to which [Petitioner] objects were disregarded.

9. [Petitioner] has not shown he was harmed by counsel's decision not to object to testimony regarding to the results of the CPS investigation.

**V. CONCLUSIONS OF LAW APPLICABLE COUNSEL'S DECISION NOT TO OBJECT TO TESTIMONY REGARDING [PETITIONER]'S FAILURE TO CONTEST THE CPS INVESTIGATION**

1. To show ineffective assistance of counsel based on a failure to object to evidence, the applicant must show the trial judge would have erred in overruling the objection.

2. [Petitioner] has failed to show that the trial judge would have erred in overruling an objection to testimony regarding [Petitioner]'s failure to contest the CPS investigation.

3. Counsel's decision not to object to the testimony was a reasonable trial strategy. Counsel effectively cross-examined Lowery; Lowery admitted she had no knowledge as to whether [Petitioner] was aware of the finding.

4. Counsel's performance was not deficient because he decided not to object to testimony or argument regarding [Petitioner]'s failure to contest the CPS findings.

5. [Petitioner] has not shown he was harmed by counsel's decision not to object to testimony regarding to the results of the CPS investigation.

6. The evidence against [Petitioner] is strong and would support a finding of guilt by the jury even if the evidence to which Applicant objects were disregarded.

7. Even if trial counsel's performance was deficient, [Petitioner] has failed to prove, by a preponderance of the evidence, that there is a reasonable probability that, but for trial counsels' unprofessional errors, the result of the proceeding would have been different.

(Id. at 11-14 (citations omitted).)

Deferring to the state courts' factual findings, and having independently reviewed Petitioner's claims in conjunction with the state-court record, the state courts' application of *Strickland* was not objectively unreasonable. Petitioner has not demonstrated deficient performance. A petitioner shoulders a heavy burden to overcome a presumption that his counsel's conduct is strategically motivated and to refute the premise that "an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp,* 760 F.2d 1080, 1090 (11th Cir. 1985). Petitioner's claims involve strategic decisions made by counsel. Such decisions are virtually unchallengeable and generally do not provide a basis for habeas-corpus relief on the grounds of ineffective assistance of counsel. *Knowles v. Mirzayance,* 556 U.S. 111, 124 (2009); *Strickland,* 460 U.S. at 689.

A failure to object does not constitute deficient representation unless a sound basis exists for objection. *See Emery v. Johnson,* 139 F.3d 191, 198 (5th Cir. 1997) (a futile or meritless objection cannot be grounds for a finding of deficient performance). Even with such a basis, however, counsel may render effective assistance despite a failure to object when the failure is a matter of trial strategy. *See Burnett v. Collins,* 982 F.2d 922, 930 (5th Cir. 1993) (noting that a failure to object may be a

matter of trial strategy as to which courts will not second guess counsel). Contrary to Petitioner's assertion, counsel's strategic decisions do not "ring hollow" and were within the realm of reasonable trial strategy. (Pet'r's Reply 5, doc. 13.) Attorneys frequently decide whether to object or not based on various issues of strategy, including a desire not to emphasize damaging evidence. *See Dodson v. Stephens,* 611 Fed. App'x 168, 176 (5th Cir. 2011) (quoting *Walker v. United States,* 433 F.2d 306, 307 (5th Cir. 1970)); *Richard v. Whitley,* 47 F.3d 424, 1995 WL 71043, at *4 (5th Cir. 1995); *Hardamon v. United States,* 319 F.3d 943, 949 (7th Cir. 2003).

**VI. Conclusion**

For the reasons discussed, the Court DENIES Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Further, Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. A certificate of appealability may issue "only if the petitioner has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003). "Under this standard, when a district court denies habeas relief by rejecting constitutional claims on their merits, 'the petitioner must demonstrate that reasonable jurists would find The district court's assessment of The constitutional claims debatable or wrong.'" *McGowen v. Thaler,* 675 F.3d 482, 498 (5th

14

Cir. 2012) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). Petitioner has not made a showing that reasonable jurists would question this Court's resolution of his constitutional claims. Therefore, a certificate of appealability should not issue.

    SIGNED February 4, 2019.

                                        TERRY R. MEANS
                                        UNITED STATES DISTRICT JUDGE